ALMA TAYLOR, Respondent, v. RICHARD TAYLOR, Appellant, No. 41565—232 S. W. (2d) 382.

Division Two, July 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, September 11, 1950.

*James R. Sullivan, Arthur R. Wolfe* and *Walter A. Raymond* for appellant.

996

*Cortner & Beals, Perry M. Cortner* and *Dwight Beals* for respondent.

998

 WESTHUES, C.—Plaintiff filed this suit against her son, the defendant Richard Taylor, for the purpose of recovering damages for the death of her husband, the father of the defendant, who lost his life as a result of a car accident alleged to have been caused through the negligence of the defendant. Plaintiff obtained a verdict in the sum of $15,000. Failing to get a new trial, the defendant appealed from the judgment entered against him.

The defendant on this appeal briefed four points as grounds for setting aside the judgment. They are (1) that the evidence was insufficient to sustain a verdict against him; (2) that it is contrary to public policy to permit a parent to sue a child where they are living together as members of a family; (3) that the decedent, plaintiff's husband, was guilty of contributory negligence as a matter of law; (4) that plaintiff's instruction No. 1 submitting the case to the jury was erroneous.

 The first assignment requires a statement of the facts. At the time of the unfortunate occurrence giving rise to this suit, Charles M. Taylor, Sr., the deceased, and his wife, the plaintiff, lived at 812 Tracy Avenue in Kansas City, Missouri. Living with them in the home were their three sons, Charles M. Taylor, Jr., 25 years old, Russell, 29 years old, and the defendant, Richard, 22 years old. The father was an engineer employed by the Missouri Pacific Railroad Company. The three sons were all employed and each one paid $10 per week to help defray the expenses of maintaining the home.

On the evening of October 29, 1946, the father desired to visit his brother, George, who lived near the Buckner-Tarsney Road a short distance south of U. S. Highway No. 40 in Jackson County, Missouri. At the supper table when the expected visit was mentioned, the father said he had missed.the bus on which he intended to ride to his brother's place. Richard suggested that he would use his car to take his father to George's place. This offer was accepted. No one at the time except the defendant Richard possessed an automobile. Richard had a short time before purchased a second-hand car. The father and the three sons got into the car and left Kansas City by way of U. S. Route 40. Charles drove the car with his father sitting in the front seat beside him; Russell and the defendant Richard sat in the back seat. The evidence was that while they were driving along highway No. 40, the lights of the car grew dim a number of times. After remaining dim for a short period, the ·lights· would again become bright. After they turned south onto the Buckner-Tarsney Road, at which time it was very dark, the

lights again grew dim and then went out. After the lights went out, the car collided with a concrete abutment of a bridge. The father was seriously injured and died on October 31, 1946. The evidence was that the car at the time of the accident was being driven at about 30 to 35 miles per hour. There was some dispute as to the distance the car traveled after the lights went out; the distance was estimated from 35 to 70 feet. The charge of negligence was that Richard furnished and provided a car to take his father to visit his brother when Richard well knew the lights of the car were defective and likely to go out, thus rendering the car dangerous for use at night. Plaintiff's evidence was that Richard had previously had trouble with this car in Kansas City at night; that the lights had gone out completely on two occasions; that the defendant inquired about having them fixed and was told a rewiring which would cost $18 was necessary; that since defendant lacked sufficient funds, he did not have the repairs made. There was evidence that the deceased and the other members of the family did not know about the defective lights prior to the fatal night and did not know until after the accident that the lights had on previous occasions gone out completely. There is evidence in the record that Charles, the driver of the car on the night in question, suggested putting in a new fuse to fix the lights; that the defendant advised waiting until they reached "Uncle George's place." A jury by its verdict found the above evidence to be true. The facts as stated certainly are sufficient to show negligence on the part of the defendant.

On the question of whether it is contrary to public policy for a parent to maintain an action in tort against a child living in the house as a member of the family, we shall confine ourselves to the facts of the present case. It is a fact that the defendant lived at home as a member of the family. It is also a fact that the defendant was not a minor since he was 22 years old at the time of the accident which occasioned this lawsuit. We are not disposed to consider this question at great length. We note that the subject has been discussed in numerous cases in many of our states. The most recent is the case of Cowgill, Adm'r v. Boock, Adm'r, No. 4708, Vol. 50, No. 20, p. 705, Advance Sheets of the Supreme Court of Oregon. The Oregon court decided, by a vote of 4 to 3, that an unemancipated child can maintain an action against his parent for a personal tort. Those who are interested will find there a thorough review of the subject matter in a majority opinion, two concurring opinions, and two dissenting opinions. In a recent case, Hale v. Hale, 230 S. W. (2d) 610, the Court of Appeals of Kentucky held that the common law disability of a parent to sue a child in tort, or vice versa, was not applicable in cases arising under ▮ the Kentucky wrongful death statute. Appellant in the case before us cited many cases to support his contention. In many of the cases we find a minor child is either plaintiff or de-

fendant. There is more reason to apply the rule in a case where the child is a minor than where he is of age. The rule is generally not applicable where the child is of age at the time the cause of action arose. 39 Am. Jur. 735, Sec. 90, and 738, Sec. 92; Reingold v. Reingold, 115 N. J. L. 532, 181 A. 153, l. c. 156 (2-4); 46 C. J. 1324, Sec. 159.

Appellant in his brief has also cited cases from other jurisdictions, such as Kitchens v. Duffield, 149 Ohio State 500, 79 N. E. (2d) 906, involving "Guest Statutes." We have no such statute in Missouri and therefore it is not necessary to consider such cases. Appellant in his brief says, "It is perfectly obvious that plaintiff, her two other sons and defendant were cooperating together to mulct the liability insurers of the defendant." There was no issue on the question of collusion presented at the trial of the case. There is no contract of insurance before us. Whether defendant was or was not insured is not before this court. George v. George, 88 S. W. (2d) (Ark.) 71, l. c. 72 (1). If an insurer desires not to insure against casualties of this nature, the contract of insurance can be worded so as to exclude such risks.

The record in this case presents no evidence justifying this court to rule that the suit by plaintiff cannot be maintained against her son who was of legal age when the alleged tort was committed. Wells v. Wells, Mo. App., 48 S. W. (2d) 109.

█ We must rule against appellant's contention that the decedent was guilty of negligence as a matter of law. That question was properly submitted to the jury. A guest in a car is not required to keep a constant lookout and to make frequent suggestions to the driver concerning the manner of operating the car. The guest is required to exercise ordinary care. In this case the evidence shows that the only person who had knowledge that the lights were so defective that there was danger of their going out completely was the defendant. When the driver made the suggestion that a new fuse be installed, the defendant demurred and said to go on to their uncle's place where the old fuse could be replaced. This was an indirect assurance that the car was reasonably safe to continue on its journey. In the circumstances the trial court's ruling was correct. 45 C. J. 1016, Sec. 567, and p. 956, Sec. 513.

█ We now come to the final assignment of error wherein appellant says that plaintiff's instruction No. 1 submitting the case and authorizing a verdict was erroneous. The principal defect as appellant contends is that the instruction did not submit to the jury the question of whether the appellant's conduct constituted negligence, but that the instruction simply told the jury that if the defendant was guilty of certain acts he was negligent. Appellant also says that the facts submitted by the instruction were insufficient to constitute negligence and that the jury was not required to find that the negli-

gence, if any, was the proximate cause of the decedent's death. The portion of the instruction containing the deficiencies as contended by the defendant reads as follows: "that prior to the driving of said automobile as aforesaid defendant knew that the lights on said automobile were defective and faulty and likely to go out; that defendant knew that it was unsafe to drive said automobile at night, if you so find, then the defendant was negligent in requesting and permitting said automobile to be so operated and driven; and that if you further find and believe from the evidence that as a result of said lights going out, the said automobile hit the abutment of a bridge; that as a direct and proximate result of said car hitting the abutment of a bridge the deceased was injured; and that as a direct result of said injuries the said Charles M. Taylor died on October 31, 1946; * * * *." We have examined the cases cited by appellant and find they do not support the theory advanced. Note in Owens v. McCleary, 313 Mo. 213, 281 S. W. 682, 1. c. 685 (5), this court had the following to say about an instruction:

"Instruction No. 1 directed the jury to determine whether 'in making said treatment the defendant carelessly and negligently injured the plaintiff' without ▇▇▇ giving them any guidance as to the specific acts or omissions, which, under the law, would constitute negligence. It permitted them to base a finding for plaintiff on any theory of negligence which they could construct or evolve out of their own minds, and was therefore erroneous."

The instruction given in the case before us is not subject to that deficiency. This instruction required the jury to find, before authorizing a verdict, specific acts on the part of the defendant. These acts, if true, constituted negligence. We deem it common sense that using a car, on the highways on a dark night, with defective lights which the operator knows are likely to go out is negligence.

This court has on a number of occasions held that an instruction is correct which requires a jury to find specific facts which, if true, constitute negligence. See Dodson v. Gate City Oil Co., 338 Mo. 183, 88 S. W. (2d) 866, 1. c. 872, 873 (7); Ward v. Missouri Pac. Ry. Co., 311 Mo. 92, 277 S. W. 908, 1. c. 910, 911 (6); Oglesby v. St. Louis-San Francisco Ry. Co., 318 Mo. 79, 1 S. W. (2d) 172, 1. c. 178, 179 (9, 10); Swain v. Anders, 349 Mo. 963, 163 S. W. (2d) 1045, 1. c. 1052 (14) (15). In the last case cited this court stated the rule to be as follows:

"Where an instruction requires the jury to find specific facts which necessarily constitute negligence as a matter of law it is immaterial that the instruction does not require the jury to find that such facts, if found, constitute negligence."

We must also rule against appellant's contention that the instruction did not require the jury to find that the negligence, if any,

was the proximate cause of the death of plaintiff's husband. A reading of the instruction hereinbefore quoted answers that contention. Note what it says: ''* * * and that if you further find and believe from the evidence that as a result of said lights going out, the said automobile hit the abutment of a bridge; that as a direct and proximate result of said car hitting the abutment of a bridge the deceased was injured; * * *.'' We think the above language plainly required the jury to find that the negligence of the defendant was the proximate cause of the death of plaintiff's husband.

The judgment is affirmed. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.