Cathy C. OWENS, et al., Appellants,

v.

James Campbell OWENS, Respondent.

No. WD 46698.

Missouri Court of Appeals,
Western District.

June 1, 1993.

Steven L. Hobson, Ronald J. Stites, Stites, McIntosh & Knepper, Kansas City, for appellants.

Richard F. Modin, Philip R. Holloway, Miller, Dougherty & Modin, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and BRECKENRIDGE, JJ.

LOWENSTEIN, Chief Judge.

The question raised in this case is whether parents may sue their eighteen-year-old son for injuries sustained in a car accident allegedly caused by their son's negligence. Cathy Owens filed a suit against her son and sought damages for his negligent operation of a vehicle. Her son, James C. Owens (James Owens), raised the defense of parental immunity in his answer. He then filed a motion for summary judgment. Soon afterward, James Owens' father, Dennis Owens, and two siblings joined the suit as plaintiffs. Again, James Owens filed a motion for summary judgment. The trial court sustained the defendant's motions for summary judgment as to Cathy and Dennis Owens. The siblings then dismissed their suit. James Owens' parents appeal the trial court's grant of summary judgment in favor of their son.

Eighteen-year-old James Owens drove his parents' van westbound on Interstate 70 on October 15, 1989. At the time, Owens' parents and brother and sister were also in the van. The van left the roadway and overturned several times. Cathy Owens suffered a broken neck. Dennis Owens suffered a crushed pelvis and hip joint. His injuries required him to stay in bed and refrain from work for two months.

On March 26, 1991, Cathy Owens filed a petition for damages against her son James Owens which alleged his negligence caused her to sustain serious injuries. Her petition also alleged James Owens lived on campus and attended Rockhurst College. In his answer, James Owens denied he lived on campus. He alleged he lived at home at the time of the accident. James Owens filed an answer stating that the action was barred by parent-child immunity and subsequently filed a motion for summary judgment. Father, sister and brother then joined the suit in an amended petition. On July 9, 1992, the trial court sustained motions for summary judgment as to mother and father. At plaintiffs' request, the trial court made a determination that there was no just reason to delay appeal of the partial summary judgment.

The appellants raise two points on appeal. First, the appellants contend the circuit court erred in granting the motions for summary judgment on the basis of parental immunity because the doctrine was inapplicable to a parent's suit against a child who had reached the age of majority. The parents contend James Owens had attained the age of majority prior to the date of the car accident. Second, the appellants assert the circuit erred in granting James Owens' motions for summary judgment because the Missouri Supreme Court abrogated the doctrine of parental immunity in suits pending on December 17, 1991, which directly challenged the doctrine. The appellants contend their suit met both those requirements.

█ In a case on appeal from a summary judgment, this court reviews the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper where there are no genuine issues of material fact and the

movant is entitled to judgment as a matter of law. *Id.* at 376; Rule 74.04.

On December 17, 1991, while this case was pending in the trial court, the Missouri Supreme Court handed down *Hartman v. Hartman*, 821 S.W.2d 852 (Mo. banc 1991), which abrogated the parental immunity doctrine. The opinion contained language that made the holding apply to "cases pending in the trial court in which a claim challenging and seeking the overturn of the parental immunity doctrine has been timely raised as of the date of the issuance of this opinion ..." *Id.* at 858. Prior to abrogation of the doctrine, a minor unemancipated child could not bring a negligence action against a parent. *Wurth v. Wurth*, 364 Mo. 453, 322 S.W.2d 745 (Mo. banc 1959); *Baker v. Baker*, 263 S.W.2d 29 (Mo.1953). Likewise, the rule applied where the parent was the injured plaintiff and the minor unemancipated child was the negligent defendant. *Brown v. Parker*, 375 S.W.2d 594, 602 (Mo.App.1964).

In *Taylor v. Taylor*, 360 Mo. 994, 232 S.W.2d 382, 383–85 (Mo.1950), the Missouri Supreme Court allowed a parent to file a suit against her son to receive damages for the death of her husband in a car accident allegedly caused by her son's negligence. At the time of the accident, her son was twenty-two years old. *Id.* at 384. He lived at home and paid $10 a week to help with the expenses of the household. *Id.* The Court noted that the parental immunity doctrine did not apply where the child was of the age of majority at the time the cause of action arose. *Id.* at 385.

■ The question is, then, whether the age of majority is eighteen years for the purpose of determining whether the parental immunity doctrine would have applied in this case.

In 1974 the Legislature attempted to change the age of majority from twenty-one to eighteen years of age for all purposes except for the purchase of alcoholic beverages. However, the Supreme Court held unconstitutional this blanket attempt to change the age of majority through an improper amendment. *State ex rel.*

*McNary v. Stussie*, 518 S.W.2d 630, 634, 637 (Mo. banc 1974). Since then, the Legislature has piecemeal changed the age of majority to eighteen in certain instances.

In 1976 the Legislature passed § 507.115, RSMo Cum.Supp.1993, which provides:

As used in sections 507.110 to 507.220, the term **"infant"** means any person who has not attained the age of eighteen years. All persons of the age of eighteen years or older, not otherwise disqualified, may commence, prosecute, or defend any action in his own name as the real party in interest.

■ James Owens argues that, absent some specific statutory change to the doctrine, the common law age of majority (i.e. twenty-one) applies in this situation. However, the parent-child immunity doctrine is court made, formulated, not by legislative action, but by courts. *Fugate v. Fugate*, 582 S.W.2d 663, 668 (Mo. banc 1979). Courts have a duty to criticize and reexamine the relationship of the rule to public policy and to make modifications. *Id.* at 668.

Applying § 507.115, this court held in *Clark v. Martin*, 650 S.W.2d 699, 701 (Mo. App.1983), a mother could not recover damages for loss of services and medical care on behalf of her eighteen-year-old daughter. The court reasoned at the time of the accident the daughter had attained the age of majority, eighteen, pursuant to § 507.-115. *Id.* at 700–01. Therefore, the cause of action for loss of earnings and medical expenses vested solely in the daughter. *Id.* at 701.

It follows that because James Owens had attained the age of majority pursuant to the statute and could commence, prosecute or defend an action in his own name at the time of the accident, he had reached the age of majority. Consequently, the parental immunity doctrine would not have applied to him. The doctrine did not apply to bar suits by parents against children who had reached majority. *Taylor*, 232 S.W.2d at 385. Because the parental immunity doctrine does not apply in this case, this

court need not address the procedural issue raised in point two.

The trial court's order granting partial summary judgment is reversed and the case is remanded for trial.